IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **OAKWORTH CAPITAL BANK** ) | |
| ) | Case No. 3:23-cv-01145 |
| v. ) | |
| ) | |
| **RC NASHVILLE DEVELOPMENT** ) | |
| **PARTNERS, LLC and TIMOTHY J. MORRIS** ) | |

To: Honorable Eli J. Richardson, United States District Judge

## REPORT AND RECOMMENDATION

This *pro se* civil case has been referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court. (Docket No. 29.)

Pending before the Court is Plaintiff Oakworth Capital Bank's motion for summary judgment (Docket No. 32) against Defendant Timothy J. Morris (Docket No. 32), to which Defendant Morris responded in opposition (Docket No. 37) and Plaintiff replied in support (Docket No. 38).[1] For the reasons discussed below, the undersigned respectfully recommends that Plaintiff's motion for summary judgment (Docket No. 32) be **GRANTED**.

### I. PROCEDURAL BACKGROUND[2]

Plaintiff, an Alabama charted bank, filed its complaint against Defendants Timothy J. Morris ("Morris") and RC Nashville Development Partners, LLC ("RC Nashville") on October

---

[1] The Court notes that Plaintiff has not sought summary judgment against the other defendant in this matter, RC Nashville Development Partners, LLC. Instead, and as discussed in detail below and in the Court's separate orders, Plaintiff moved for entry of default against RC Nashville, which the Court granted. However, Plaintiff has not moved for default judgment against RC Nashville.

[2] Any statements of made in this section about the underlying dispute are contextual only. Statements of facts considered for purposes of the instant motion for summary judgment are detailed below.

28, 2023. (Docket No. 1.) In short, Plaintiff asserts that it entered into a loan with RC Nashville, which was executed by Morris as managing member of RC Nashville, and which was amended by a promissory note. (*Id.* at ¶¶ 7–8.) Separately, and in conjunction with the loan, Morris executed a guaranty to Plaintiff. (*Id.* at ¶ 9.) Plaintiff asserts that RC Nashville and Morris failed to pay Plaintiff when the note matured. (*Id.* at ¶ 12.) Accordingly, Plaintiff initiated this lawsuit and asserted the following three claims: (1) breach of note against RC Nashville; (2) breach of guaranty against Morris; and (3) unjust enrichment against RC Nashville and Morris.

After filing its complaint, Plaintiff filed executed returns of summons indicating that it served Morris and RC Nashville on November 9, 2023. (Docket Nos. 12, 13.) On December 1, 2023, Plaintiff filed a motion for entry of default against Morris and RC Nashville. (Docket No. 15.) However, in an order dated December 13, 2023, the Court denied the motion as to Morris, due to his interim submission of a responsive letter (Docket No. 16), and denied the motion without prejudice as to RC Nashville. (Docket No. 20.)

In his response, Morris, representing himself *pro se*, purportedly acted on his own behalf and on behalf of RC Nashville. (Docket No. 16.) In the letter, Morris "submit[ted] the following responses to Civil Action No. 3:23-cv-01145":

> **As to Count** 1 – Breach of Note (RC Nashville).
> Response: Agree as Stated
>
> **As to Count 2** – Breach of Guaranty (Morris)
> Response: Agree as Stated
>
> **As to Count 3** – Unjust Enrichment (Defendents [sic])
> Response: Disagree, as there were and continue to be extenuating circumstances associated with this matter which I am still working on to satisfy with Plaintiff. These discussions are on-going with Plaintiff as of the date of this submission and I am hopefully that a mutually agreeable solution can be achieved in the very near future.

(*Id.*).

The Court informed Morris many times that he could not represent RC Nashville because he is not an attorney. (Docket No. 23 at 1 n.2.) Despite providing RC Nashville with several opportunities to obtain counsel to represent it, RC Nashville failed to do so. Accordingly, as detailed in its April 15, 2024 order, the Court granted Plaintiff's motion for entry of default against RC Nashville and entered default against RC Nashville. (Docket No. 30.)[3]

## II. MOTION FOR SUMMARY JUDGMENT

On April 19, 2024, Plaintiff filed the instant motion for summary judgment.[4] (Docket No. 32.) The motion is accompanied by a declaration from Greer Redden (Docket No. 32-1), a declaration from Ross M. Johnson (Docket No. 32-2), a memorandum of law (Docket No. 33), and a statement of undisputed material facts (Docket No. 34). The Court set a briefing schedule and reminded Morris of the import of a motion made under Rule 56(a). The Court cautioned Morris that he was required to specifically respond to Plaintiff's statement of undisputed facts (Docket Entry No. 34) in accordance with Local Rule 56.01(c), or else "the asserted facts shall be deemed undisputed for purposes of summary judgment pursuant to Local Rule 56.01(f)." (Docket No. 36.)

In its motion, Plaintiff asserts that Morris does not dispute the allegations that he breached the guaranty because, in his answer, Morris responded "Agree as Stated" to the claim for breach of guaranty. (Docket No. 32 at 2.) Accordingly, Plaintiff argues that there is no

---

[3] In its April 15, 2024 order, the Court provided a lengthy history of the procedure surrounding the entry of default against Defendant RC Nashville. (Docket No. 30 at 1–3.)

[4] Plaintiff styled its motion as a "Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment." (Docket No. 32.) However, as detailed in the Court's prior order (Docket No. 29), because Defendant RC Nashville Development Partners, LLC had not filed an answer, the Court found that the pleadings had not closed for purposes of Rule 12(c) and a motion for judgment on the pleadings was premature. Accordingly, the Court treated the instant motion as one for summary judgment. (Docket No. 36 at 1 n.1.)

3

genuine issue as to any material fact and that it is entitled to judgment as a matter of law against Morris on Count 2 of its Complaint for breach of guaranty. (*Id.*)

Plaintiff submitted six separate statements of material facts to support its motion, which are listed verbatim as follows:

1. On August 9, 2022, RC Nashville Development Partners, LLC ("RC Nashville") and Plaintiff entered into a revolving line of credit loan ("Loan"), as evidenced by that certain Promissory Note, payable to the order of Plaintiff, in the maximum principal amount of Ten Million and 00/100 Dollars ($10,000,000.00) as modified and amended by those certain Amendments to Loan Documents dated January 12, 2023 and April 10, 2023 (collectively the "Note").

2. In conjunction with and as a condition of Plaintiff providing the Loan to RC Nashville, on August 9, 2022, Morris executed a Continuing Guaranty of all present and future indebtedness and obligations of RC Nashville arising out of the Loan from Plaintiff (the "Guaranty").

3. Pursuant to the terms of the Guaranty, Morris, among other obligations, unconditionally, absolutely, and irrevocably guaranteed to Plaintiff the full and prompt payment and performance when due of all amounts owed by RC Nashville to Plaintiff under the Loan and Note.

4. The Note matured and was due and payable on August 9, 2023 ("Maturity Date").

5. Morris failed to make the required payments under the Note and Guaranty on or before the Maturity Date.

6. The Defendants RC Nashville, as maker of the Note, and Morris as guarantor of the Note, have defaulted on the Note and Guaranty causing damages to Plaintiff in the amount of $11,463,882.90, plus reasonable attorneys' fees and expenses equal to $64,255.27, court costs, and post-judgment interest.

(Docket No. 34 (citations omitted).)

In response to the motion for summary judgment, Morris asked the Court to "consider a postponement of a final ruling on this matter until July 15, 2024," by which time he asserted he would have a "solution to secure the Plaintiff a significant paydown of this outstanding debt."

(Docket No. 37 at 3.) However, Morris failed to explicitly respond to the statement of undisputed material facts, despite the Court's clear instruction to do so.

In its reply, Plaintiff argued that Morris's response to the motion was a concession that there is no material issue of fact. (Docket No. 38.) It also pointed to Morris's failure to explicitly respond to the statements of material fact as required under Local Rule 56.01(c). (*Id.*)

## III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A genuine issue of material fact is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018). If the summary judgment movant meets that burden, then, in response, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed – i.e., a party seeking summary judgment and a party opposing summary judgment, respectively – must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such

5

an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018).

In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The Court must view the evidence and all inferences drawn from underlying facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001).

## IV. ANALYSIS

### 1. Local Rule 56.01 and Plaintiff's Initial Burden Under Rule 56 of the Federal Rules of Civil Procedure

Under the Local Rules, "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Local R. 56.01(b). Each of these facts "must be set forth in a separate, numbered paragraph," "must be supported by specific citation to the record," and "the word 'response' must be inserted and a blank space provided that is reasonably calculated to allow the non-moving party sufficient space to respond to the assertion that the fact is undisputed." *Id.*

Any party opposing a motion for summary judgment must respond specifically to each asserted fact by either "(1) [a]greeing that the fact is undisputed; (2) [a]greeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) [d]emonstrating that the fact is disputed." Local R. 56.01(c). For each fact that is disputed, there must a "specific citation to the record." *Id.* Pro se parties are not excused from this requirement. *See id.*

The Local Rules contemplate the resulting ramifications if a party does not respond to the statement of material facts in a timely manner: "If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, *the asserted facts shall be deemed undisputed* for purposes of summary judgment." Local R. 56.01(f) (emphasis added).

Here, Plaintiff filed a statement of undisputed material facts with its motion for summary judgment in compliance with the Local Rules. However, Morris failed to respond to these assertions. Accordingly, the Court must accept these unaddressed asserted undisputed facts as true.

Local Rule 56.01(f) applies only to "*facts*, not argument, conclusions, or legal principles." *New Century Found. v. Robertson*, 400 F. Supp. 3d. 684, 690 n.1 (M.D. Tenn. 2019); *see also* Local R. 56.01(f) (providing that unaddressed "asserted *facts* shall be deemed undisputed for purposes of summary judgment" (emphasis added)). Accordingly, even though Morris did not explicitly respond to Plaintiff's statement of undisputed material facts, the Court still must examine the evidence Plaintiff offers in support of its motion for summary judgment to determine if it has met its initial burden. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 447 U.S. at 330; *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Pewitte v. Hiniger*, No. 3:17-cv-00822, 2020 WL 2218754, at *9 (M.D. Tenn. May 6, 2020).

2.  **Breach of Guaranty**

To bring a breach of personal guaranty, a plaintiff must demonstrate "(1) the existence of an enforceable contract, (2) the breach of the contract, and (3) damages resulting from the

breach." *Hard Surfaces Solutions, LLC v. Construction Mgmt., Inc.*, 544 F.Supp.3d 825, 832–33 (M.D. Tenn Jun. 21, 2021) (quoting *BP Prod. N. Am. Inc. v. Premier Oil Co., LLC*, No. 2:11-CV-2162-JPM-CGC, 2013 WL 12251287, at *4 (W.D. Tenn. Dec. 26, 2013)) (citing *C & W Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (applying the elements of a breach of contract to a breach of a personal guaranty)).

The Court finds that Plaintiff has carried its initial burden to demonstrate the absence of a genuine issue of material fact as to its claim against Morris for breach of guaranty.[5] As to the first element of a breach of guaranty claim, in its statement of undisputed material facts, Plaintiff asserts that it extended to RC Nashville a revolving line of credit loan as evidenced by a promissory note and subsequent amendments. (Docket No 34 at ¶ 1.) Plaintiff refers to the note and other loan documents attached to the complaint as Exhibit A. (Docket No. 1-1.) Plaintiff also asserts that Morris executed a continuing guaranty of all indebtedness and obligations of RC Nashville arising out of the loan and note. (Docket No. 34 at ¶¶ 1–2.) Specifically, Plaintiff asserts that Morris guaranteed the full and prompt payment of all amounts owed by RC Nashville under the loan and note. (Docket No. 34 at ¶ 3.) Plaintiff attached the guaranty executed by Morris to the complaint as Exhibit B. (Docket No. 1-3.) In support of these assertions, Plaintiff relies on its complaint, the note (including amendments) and guaranty attached to the complaint, and Morris's answer (Docket No. 16) in which he agrees to the allegations of the complaint as stated. (Docket No. 34 at ¶¶ 1–3.)

---

[5] To be clear, the Court examines the evidence to confirm that Plaintiff has asserted undisputed material facts. But this does not suggest that Morris can escape the consequential treatment of the stated facts as undisputed per Local Rule 56.01(f). Application of Local Rule 56.01(f) would alone be enough in this case to support summary judgment against Morris in favor of Plaintiff.

As to the second element, Plaintiff asserts that the note matured on August 9, 2023, but that RC Nashville and Morris both failed to make the required payments on time. (Docket No. 34 at ¶ 4–5.) In support of these assertions, Plaintiff relies on its complaint, the guaranty attached to the complaint, and Morris's answer. (*Id.*)

Although Plaintiff did not explicitly cite to the declaration of Greer Redden as evidencing the first five statements of fact, which substantiate the first two elements of a breach of guaranty claim, the Court finds that Mr. Redden's declaration supports those assertions. Under Rule 56(c), although the Court "need consider only the cited materials," the Court "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court elects to do so in this instance, including because Mr. Redden's declaration is easily identifiable and accessible in the record. Further, because Mr. Redden's declaration is offered as evidence to specifically support Plaintiff's sixth assertion of fact, as discussed below, the Court finds the declaration is properly considered for all purposes in connection with Plaintiff's motion for summary judgment.

In his declaration, Mr. Redden states that: Plaintiff entered into a loan with RC Nashville that was modified by a note (Docket No. 32-1 at ¶ 5); Morris entered in a guaranty "of all present and future indebtedness and obligations of RC Nashville arising out of the Loan" (*id.* at ¶ 7); the note matured on August 9, 2023 and the entire sum became due (*id.* at ¶¶ 9–10); and RC Nashville and Morris failed to pay the sum owed (*id.* at ¶ 11). Additionally, Morris states in his answer in response the breach of guaranty claim: "Agree as Stated." (Docket No. 16 at 1.) The Court finds that all together this evidence demonstrates "(1) the existence of an enforceable contract [and] (2) the breach of the contract." *Hard Surfaces Solutions, LLC*, 544 F.Supp.3d at 832–33.

As to the third element, "damages resulting from the breach," *id.*, Plaintiff asserts that RC Nashville, as maker of the note, and Morris, as guarantor of the obligations due under the note, caused damages to Plaintiff "in the amount of $11,463,882.90, plus reasonable attorneys' fees and expenses equal to $64,255.27, court costs, and post-judgment interest." (Docket No. 34 at ¶ 6.)[6] In support of these assertions, Plaintiff points to its complaint, the note (including amendments) and guaranty attached to the complaint, Morris's answer, and the declarations of Greer Redden and Ross M. Johnson. (*Id.*) Specifically, for its damages, Plaintiff cites to Mr. Redden's statement that "the indebtedness due under the note and guaranty as of April 18, 2024 is $11,463,882.90, which amount consists of unpaid principal in the amount of $9,714,846.16, accrued and unpaid interest through April 18, 2024 of $1,712,067.49,[7] and other charges of $2,999.97 (this amount excludes attorney fees and expenses)."[8] (Docket No. 32-1 at ¶ 17.)

As set forth above, Morris failed to explicitly respond to these assertions in compliance with Local Rule 56.01(f). Although Morris responded to the substance of the summary judgment motion, his arguments are unavailing. (Docket No. 37.) In his response, Morris includes a section titled "background," which describes his past professional successes and challenges, and a

---

[6] For the reasons discussed below in the second on prejudgment interest, the Court recommends entry of judgment against Morris for the principal amount due under the Note on the date of default, August 9, 2023, which appears to be $9,997,318.26, *see* Docket No. 32-1 at 45, plus late charges of $2,999.97, for a total of $10,000,318.23. However, because it appears that there may have been payments or other debt adjustments after August 9, 2023, *id.*, the Court recommends that Plaintiff provide a sworn accounting of the principal debt as of August 9, 2023, accruing prejudgment interest beginning on August 10, 2023, and any credits or other debt adjustments between August 10, 2023, and the date of submission of the sworn accounting.

[7] Although the Court ultimately finds that Plaintiff is entitled to prejudgment interest, the Court will address whether the *amount* of prejudgment interest sought by Plaintiff is appropriate in a separate section.

[8] This amount of $2,999.97 is for late fees, according to the loan pay-off letter generated by Plaintiff. (Docket No. 32-1 at 44.)

10

section titled "today," which details his prior investments on the real estate project at issue in this litigation and his current efforts to rectify the issues related to the project. (Docket No. 37 1–2.) Morris also includes a section titled "ask," which requests the Court delay its ruling on the motion until July 15, 2024 as he is "dutifully engaged in working on a viable solution to secure the Plaintiff a significant paydown of this outstanding debt, which again is clearly in our collective best interest." (*Id.* at 3.) While the Court appreciates Morris's attempts to resolve this matter extrajudicially, Morris has failed to provide the Court with any *factual or legal* – as opposed to potentially practical – reason to deny Plaintiff's motion for summary judgment. As Plaintiff argues in its reply, Morris's response confirms Plaintiff's assertions of fact more than it disputes them. (Docket No. 38 at 2.) ("With his latest filing, Mr. Morris is not disputing these facts . . . Rather, he is asking for more time to 'pay down' the debt and 'secure a financial investor / partner.'")

In short, Morris has failed to show that there is a genuine issue of material fact for trial. In fact, Morris did not challenge Plaintiff's assertions of material fact in any respect. Morris failed to dispute that he guaranteed RC Nashville's debt to Plaintiff; that he was obligated to pay all amounts owed by RC Nashville under the Note but failed to do so; and that this failure caused damage to Plaintiff.

The Court expressly finds that Plaintiff has adequately asserted undisputed material facts for purposes of summary judgment under Rule 56(c). The material undisputed facts show: (1) that Morris entered into a contract with Plaintiff by which he guaranteed all indebtedness and obligations of RC Nashville arising out of the line of credit loan evidenced by the note from RC Nashville to Plaintiff; (2) that Morris was obligated to fully and promptly pay all amounts owed by RC Nashville under that note, but failed to do so; and (3) that Plaintiff was damaged by

Morris's failure to fully and promptly pay the amounts owed. Accordingly, the Court finds that Morris is in breach of his guaranty of the obligations of RC Nashville and that Plaintiff is entitled to summary judgment against Morris on Count 2 of the Complaint for breach of guaranty as a matter of law.

### 3. Prejudgment Interest

Plaintiff seeks "accrued and unpaid interest through April 18, 2024 of $1,712,067.49." (Docket No. 32-1 at ¶ 17.) In diversity cases in the Sixth Circuit, "state law governs awards of prejudgment interest." *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000)). Under Tennessee law, "[p]re-judgment interest . . . may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." Tenn. Code Ann. § 47-14-123. Tennessee courts have construed this statute to mean that "[a]n award of prejudgment interest is within the sound discretion of the trial court" and will not be disturbed on appeal, "where the evidence supports the trial court's decision." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

Equity is the "foremost" consideration governing the decision of whether to award prejudgment interest. *Id.* "Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Id.* Two other criteria are relevant: (1) whether "the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds"; and (2) whether "the existence of the obligation itself is not disputed on reasonable grounds." *Id.* (citations omitted).

Here, the "amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds." *Id.* There is no dispute that Morris is obligated to Plaintiff. In fact, in his response to the complaint (Docket No. 16 at 1), Morris expressly agrees with the breach of guaranty claim against him as described in the general allegations, which set out the terms of the underlying obligation (Docket No. 1 at 2-4), and Count 2, which states that the guaranty is enforceable in accordance with its terms (Docket No. 1 at 4). Further, as discussed in more detail above, Morris failed to respond to Plaintiff's statement of undisputed material facts. (Docket No. 34.) The statements of undisputed material facts include reference to the declaration of Greer Redden (Docket No. 34 at 3), which is separately filed at Docket No. 32-1, and which evidences that the amount of the obligation can be easily ascertained by a proper accounting, as demonstrated by the Payoff Letter and Summary of Unpaid Interest. *See* Exhibit C to Redden Declaration (Docket No. 32-1 at 44-45.[9] Because the amount of the obligation is certain or can be easily ascertained by a proper accounting and Morris does not dispute the amount of the obligation on any reasonable basis[10], the equities support an award of prejudgment interest. In short, the Court finds no equitable basis to support that an award of prejudgment interest would be unfair in this case.

To the contrary, having considered the entirety of the circumstances, the Court finds that the equities favor the award of prejudgment interest. However, in several instances, Plaintiff

---

[9] Under Local Rule 56.01(f) this statement of fact must be deemed as unopposed. However, although Morris failed to respond to this statement, the calculations by Plaintiff include prejudgment interest at rates that exceed those permitted in this diversity jurisdiction case.

[10] Morris arguably fails to oppose the amount of the obligation on any basis. As discussed above, Morris's response (Docket No. 37) to Plaintiff's motion for summary judgment is little more than a professional resume. It cannot be characterized as a reasonable dispute of the amount of the obligation he owes to Plaintiff.

13

applied a rate that exceeds the "maximum effective rate of ten percent (10%) per annum" that is permitted under Tenn. Code Ann. § 47-14-123. *See* Summary of Unpaid Interest (Docket No. 32-1 at 45) (payment date of 09/10/23 with interest rate of 16.97545%; payment date of 10/01/23 with interest rate of 16.96659%; and payments dates of 10/10/23, 11/13/23, 11/22/32, 12/13, 23, 02/09/24, and 04/18/24 with interest rate of 24.00000%). While an award of prejudgment interest is fair, the Court declines to award Plaintiff prejudgment interest in any amount that exceeds a rate of 10% per annum. Further, because it is not entirely clear from Plaintiff's submissions whether interest was calculated on attorneys' fees, the Court also expressly notes the rule that prejudgment interest cannot attach to attorneys' fees. *Fulmer v. SARCO, GP*, No. M2022-01479-COA-R3-CV, 2023 WL 5787082, at * 7 (Tenn. Ct. App. Sept. 7, 2023).

For all these reasons, the Court finds that prejudgment interest is warranted, but not in the amount sought by Plaintiff. Rather, the Court determines that prejudgment interest should be awarded on the unpaid principal obligation owed to Plaintiff at a maximum effective rate of ten percent (10%) per annum beginning on August 10, 2023 until the date of final judgment. The Court finds that this calculation of prejudgment interest will fairly compensate Plaintiff for the loss of the use of funds to which it was legally entitled without penalizing Morris for wrongdoing. *Id*. at *6 (citing *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 860 S.W.2d 439, 446 (Tenn. 1992)).

Accordingly, as detailed below, Plaintiff must submit a sworn accounting of the unpaid amount of the Note as of August 9, 2023 with calculation of prejudgment interest, including per diem, at a maximum effective rate of ten percent (10%) per annum beginning August 10, 2023 and inclusive of any credits or debt reduction between August 10, 2023 and the date of the

submission of the sworn accounting.[11] Plaintiff must provide the Court with support for this requested amount.[12] Further, Plaintiff's sworn submission must affirmatively state that no prejudgment interest is calculated on attorneys' fees.

 4. **Post-Judgment Interest**

District courts are required to award post-judgment interest. *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). Under federal law, post-judgment interest is prescribed by statute at the rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. Accordingly, the Court finds that Plaintiff is entitled to post-judgment interest beginning the date the judgment is entered. The Court finds that the weekly average one-year constant maturity Treasury yield published by the Board of Governors of the Federal Reserve for the week preceding entry of judgment is appropriate. The Court finds that an award computed at this rate as to the judgment imposed against Morris in accordance with 28 U.S.C. § 1961(b) is appropriate.

 5. **Attorneys' fees**

Although Plaintiff does not cite to Mr. Redden's declaration specifically, the declaration also states that "the Note and Guaranty allow for recovery of [Plaintiff's] attorneys' fees in the

---

[11] From the attachment to the Redden declaration, it appears that payments or other debt reductions or adjustments were made after October 28, 2023 when the complaint was filed in this case and before the payoff calculation date of April 18, 2024. *See* Docket No. 32-1 at 45.

[12] The Court would suggest that Plaintiff provide a declaration and updated accounting of principal balance and interest accrual summary, with per diem calculation, and all pre-litigation credits or other debt adjustments, like the payoff letter and interest summary attached to Mr. Redden's declaration. This is not a requirement, but a document of this nature would be helpful to the Court.

event of default thereunder."[13] (*Id.* at ¶ 8.) In addition, Plaintiff cites to Mr. Johnson's declaration that "Plaintiff has incurred $64,255.27 in attorney's fees and expenses associated with this litigation (not including court costs)," which is supported by time entries attached to Mr. Johnson's declaration. (Docket No. 32-2 at ¶ 8; Docket No. 32-2 at 5–9.)

The party seeking attorney's fees – here, Plaintiff – has two main obligations: (1) to provide the court with "evidence supporting the hours worked and rates claimed" and (2) to demonstrate that the requested fee award is "reasonable." *Lance Coal Corp. v. Caudill*, 655 F. App'x 261, 262 (6th Cir. 2016); *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015). The starting point for determining the reasonableness of a requested fee is the "lodestar" analysis, by which the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by a reasonable hourly rate. *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016). In determining whether a requested hourly rate is reasonable, the court looks to the "prevailing market rate in the relevant community" and considers the skill, experience, and reputation of the attorneys involved in the

---

[13] In its reply in support of its motion for summary judgment, Plaintiff points to the following paragraph from the guaranty to demonstrate that it is entitled to attorney's fees:

> Expenses, Costs and Attorneys' Fees. Guarantor agrees to pay to Lender all costs and expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the Obligations or to enforce, protect, or defend the Obligations, or any portion thereof, or to enforce, protect, or defend the perfection, validity, priority, or enforceability of any mortgage assignment, pledge, security interest, or lien, which secures the Obligations, or any portion thereof, or to enforce, collect, protect or defend the Loan or any Loan Documents, or to enforce, protect, or defend any collateral or to collect or realize against any collateral which secures the Obligations or to enforce, collect or defend this Guaranty.

(Docket No. 38 at 4 n.2 (citing Docket No. 32-1 at 40, § 23).) Mr. Redden does not cite to a precise portion of the guaranty, but the Court nevertheless finds this paragraph is consistent with Mr. Redden's declaration.

litigation. *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). If the requested fee is essentially in line with the "lodestar," then there is a strong presumption that the requested fee is reasonable and recoverable. *Id.*

The Court has reviewed Mr. Johnson's declaration and the attached time entries and finds that Plaintiff has met its obligations to provide evidence supporting the hours and rates claimed and to demonstrate that the requested award is reasonable. The Court finds that counsel for Plaintiff expended a reasonable amount of work on this matter, and that the rates requested are in line with the prevailing market rate. *See Minor*, 826 F.3d at 881; *Adcock-Ladd*, 227 F.3d at 350. Accordingly, the Court finds that Plaintiff is entitled to the amount of attorney's fees and expenses requested, which totals $64,255.27.

## V. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** as follows:

1. Plaintiff's motion for summary judgment (Docket No. 32) against Defendant Timothy J. Morris be **GRANTED**.

2. Plaintiff be required to submit a sworn accounting of (i) the unpaid principal balance of the Note as of the default date of August 9, 2023; (ii) prejudgment interest on the unpaid amount of the Note calculated at a maximum effective rate of ten percent (10%) per annum beginning August 10, 2023, with per diem (amount of interest accruing daily); and, (iii) any credits or other debt adjustments made between August 9, 2024 and the date of submission of the sworn accounting. Further, Plaintiff's sworn submission must affirmatively state that no prejudgment interest is calculated on attorneys' fees.

17

Case 3:23-cv-01145    Document 39    Filed 07/02/24    Page 17 of 18 PageID #: 365

3. Judgment be entered against Defendant Timothy Morris in favor of Plaintiff for:

   a. Compensatory damages in the amount of the unpaid principal of the Note as of the August 9, 2023 default date plus late charges of $2,999.97;

   b. Prejudgment interest in an amount to be determined by the Court after Plaintiff submits a sworn accounting as directed above;

   c. Post-judgment interest accruing at a rate to be computed in accordance with 28 U.S.C. § 1961(b); and,

   d. Attorneys' fees and expenses of $64,255.27.

4. Plaintiff be required to submit a proposed form of judgment conforming to the Court's determination of the relief properly afforded to Plaintiff.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. of Civ. P. 72(b)(2), Local R. 72.02(b). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2), Local R. 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

18

Case 3:23-cv-01145   Document 39   Filed 07/02/24   Page 18 of 18 PageID #: 366